COMMONWEALTH vs. ROBERTO LANTIGUA.

No. 93-P-1386.

Essex. January 9, 1995. - May 11, 1995.

Present: ARMSTRONG, SMITH, & LAURENCE, JJ.

*Search and Seizure*, Threshold police inquiry, Automobile. *Constitutional Law*, Search and seizure.

Police officers who approached a stopped vehicle, which had previously failed to stop at a stop sign and from which the driver had just then alighted, were justified, after ascertaining that the driver had no license, in entering the car, either to effect a weapons' search of the areas accessible to the driver on his reentering to retrieve a registration [527-529], or to retrieve the registration themselves [529].

Evidence at a criminal trial was sufficient to warrant the findings of guilty. [530]

INDICTMENT found and returned in the Superior Court Department on November 13, 1991.

A pretrial motion to suppress evidence was heard by *John L. Murphy, Jr.*, J., and the case was tried before *Peter J. Brady*, J.

*Ronald Ian Segal* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. Two police officers on patrol in an unmarked cruiser drove by the defendant's car and the car of a person known to them parked at the roadside. The person whom the officers knew, and of whom they were suspicious for reasons not put in evidence, was walking toward the defendant's car. The officers reversed direction to return to the scene and saw the defendant's car pulling away "at a fairly good rate of speed." They followed the defendant's car in the cruiser and observed it drive through a stop sign at an intersection, slowing but not stopping, and turn into the parking

lot of an apartment building. The two officers, now pursuing with the intent of stopping the defendant's car for the traffic violation, drove into the lot after him. The defendant parked his car. The officers, pulling up behind him, saw the defendant lean forward and down to the right before he got out of the car. The officers, who were not in uniform, identified themselves as police and asked to see the defendant driver's license and registration. The defendant was unable to produce a license. He offered to get the registration from the glove compartment, but one of the officers, as a safety precaution, wanted to look into the car first. The officer opened the driver's door, leaned across the seat toward the glove compartment and observed plastic bags containing white powder on the floor. The powder appeared to the officer, an experienced narcotics investigator, to be cocaine — a fact verified by subsequent testing. He then opened the console and found another bag of white powder. From the glove compartment, he obtained the registration which was in the name of a person other than the defendant. The officers then formally arrested the defendant for possession of cocaine, citing him also for operating without a license and failing to stop at a stop sign. The facts set out above are, in essence, those found by the judge, warrantably, on the evidence introduced at the suppression hearing.

After the powder was tested and weighed, the defendant was indicted for trafficking in cocaine and was convicted. The appeal raises, as the principal issue, the judge's denial of the defendant's motion to suppress the cocaine.

The entry into the car was lawful. The case comes within the authority of such cases as *Commonwealth* v. *Almeida*, 373 Mass. 266, 270-273 (1977); *Commonwealth* v. *Ferrara*, 376 Mass. 502, 504-505 (1978); *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 129-131 (1984), cert. denied, 469 U.S. 1193 (1985); and *Commonwealth* v. *Robbins*, 407 Mass. 147, 151-152 (1990). See also *Commonwealth* v. *Silva*, 366 Mass. 405-410 (1974). The officers had seen a traffic violation, which justified stopping the defendant's car and asking to see the defendant's driver's license and automobile regis-

tration. (The fact that he had already stopped and had exited from the car did not terminate their authority in this regard.) The defendant's inability to produce a license was itself a criminal offense (see G. L. c. 90, § 11 [operating without a license in possession]; § 10 [operating without having been issued a license]; § 23 [operating after suspension or revocation of license]) and gave the officers probable cause to arrest him (see G. L. c. 90, § 21). See generally Nolan & Henry, Criminal Law §§ 582, 583 (2d ed. 1988). Inability to produce a license or a registration reasonably gives rise to a suspicion of other offenses, such as automobile theft, and justifies heightened precautions for the officers' own safety.

Faced with this situation, the officer's entry into the car was justified on either of two rationales. First, prior to allowing the defendant to reenter the car to obtain the registration, the officers could properly effect a *Terry*-type search of the areas of the car which would be readily accessible to the defendant on reentering. The purpose of the search would be protective only, analogous to a pat frisk of the defendant's person for weapons. The reasonableness of a scan for weapons turns, we think, not so much on the finding that the defendant bent down and to the right before leaving the car, [1] but on the particular danger to an officer when the person he is investigating is seated in a car with his movements concealed from the officer's view. The same concerns that allow an officer investigating a traffic violation to order the driver out of the car for the officer's safety, *Pennsylvania* v. *Mimms*, 434 U.S. 106, 110 (1977), also allow a limited search of the passenger compartment for weapons before the passenger reenters the car to obtain the registration. Courts

[1]The reason we do not give weight to this finding is that the defendant seems not to have realized that he was being pursued by the police until after he got out of the car. Therefore, the line of decisions that suggest that furtive movements in response to a stop or chase may give a police officer particular reason for concern, see *Commonwealth* v. *Silva*, 366 Mass. at 407; *Commonwealth* v. *Moses*, 408 Mass. 136, 138, 143 (1990); *Commonwealth* v. *Tompert*, 27 Mass. App. Ct. 804, 805, 809 (1989), may not be relevant.

cannot be oblivious to the recent escalation in the numbers of incidents reported wherein police officers have been killed or wounded while performing routine traffic functions. "[W]e think it crucial to remember that, as shown by many staged climaxes to threshold police inquiries, 'the answer might be a bullet.' " *Commonwealth* v. *Silva, supra* at 407, quoting from *Terry* v. *Ohio*, 392 U.S. 1, 33 (1968) (Harlan, J., concurring). In such encounters officers must be allowed to take reasonable precautions for their own safety. *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978).

Second, the officers could properly have entered the passenger compartment, including the glove compartment, to retrieve the registration themselves. In *Michigan* v. *Long*, 463 U.S. 1032 (1983), where the court approved the extension of *Terry* searches for weapons into the passenger compartment of a stopped car, Justice Brennan, dissenting, suggested that, rather than permitting a driver already outside the car to reenter for the purpose of obtaining the registration, an investigating officer, as a less intrusive alternative to a *Terry* search of the car, could determine from the driver where in the vehicle the registration was located and then enter the car for the limited purpose of getting it himself. *Id.* at 1065 n.7. Compare *Cotton* v. *United States*, 371 F.2d 385, 393 (9th Cir. 1967), *United States* v. *Powers*, 439 F.2d 373, 375 (4th Cir.), cert. denied, 402 U.S. 1011 (1971), and *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 217-221 (1974), all decisions approving police entries into vehicles for the limited purpose of ascertaining vehicle ownership or place of origin through the vehicle identification number or the inspection sticker.

On either rationale the officer's entry into the car was justified. When he observed bags of cocaine powder partially visible on the floor, the officer was justified in seizing them and in searching for additional contraband. See *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 688, 689-690 & n.8 (1984). The motion to suppress the cocaine was correctly denied.

There is no merit to the defendant's further contention that his motion for a required finding of not guilty should have been allowed. The judge, as finder of fact, was not required to believe the defendant's story that he had borrowed the car and that the cocaine belonged to its owner. The evidence that some of the cocaine was located in areas of the car within the driver's easy reach, partially in plain view, brings this case within the authority of *Commonwealth* v. *Albano*, 373 Mass. 132, 135-136 (1977). Contrast facts in *Commonwealth* v. *Garcia*, 409 Mass. 675, 687 (1991).

*Judgment affirmed.*