COMMONWEALTH *vs.* LINDSEY M. HEUGHAN
(and thirteen companion cases).[1]

No. 95-P-426.

Suffolk. November 20, 1995. - February 28, 1996.

Present: PERRETTA, KASS, & SMITH, JJ.

*Search and Seizure,* Arrest, Automobile, Probable cause. *Probable Cause. Constitutional Law,* Search and seizure, Probable cause. *Practice, Criminal,* Motion to suppress.

In the circumstances of police officers' stop of a speeding vehicle in the vicinity of police radio-reported episodes of gunfire, wherein a rear seat passenger bent down out of sight as the car was pulled over, and the driver could produce no license and no occupant of the vehicle could produce a registration, there was probable cause for the police to make a warrantless search, for their protection, of the automobile and its occupants: two handguns found under the front seats of the car and controlled substances found on the defendants' persons were properly admissible in evidence. [104-105]

INDICTMENTS found and returned in the Superior Court Department on April 13, 1994.

Pretrial motions to suppress evidence were heard by *Thayer Fremont-Smith,* J.

An application for an interlocutory appeal was allowed by *O'Connor,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

*John J. Russell* for Mehare K. Daniel.

*Peter M. Dempsey* for Lindsey M. Heughan.

*Robert J. Zanello* for Derrick Sadberry.

---

[1]Five of the companion cases are against Lindsey M. Heughan, four are against Derrick Sadberry, and four against Mehare K. Daniel.

KASS, J. In response to police radio reports of gun shots, first outside the Area B-2 police station on Dudley Street and a minute later near Madison Park High School, three Boston police officers in a cruiser stopped a car, searched it without a warrant, and found two handguns. The defendants moved to suppress the weapons as evidence against them on charges of unlawful possesssion of firearms. The motion to suppress on behalf of the defendant Heughan was also directed against five bags of marijuana that the police found on his person, and, on behalf of the defendant Daniel, against one bag of crack cocaine he possessed. The officer or officers who made the radio broadcasts did not testify at the suppression hearing. A judge of the Superior Court allowed the motions to suppress on the authority of *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 55 (1974). The Commonwealth received leave under Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979), to take an appeal. We reverse.

These are the facts presented to the motion judge. At approximately 9:15 P.M. on March 22, 1994, three officers who were members of the Boston police department Anti-Gang Violence Unit received the gunfire reports. After the first report of gunfire outside the Area B-2 police station, the officers drove their cruiser toward the station. When they received the second broadcast, they headed in a direction that they surmised the shooters might be moving. Officer Robert Rogers, one of the three policemen, thought the source of the first broadcast was an officer at the Area B-2 station and that the source of the second broadcast was a 911 (police emergency) call.

Some 200 to 300 yards from the Madison Park High School the officers encountered a brown Toyota automobile speeding from the direction of the school at about fifty miles per hour in a thirty miles-per-hour zone. The officers pulled the Toyota over. As they did so, Officer Rogers watched the defendant Heughan, one of three young men in the car, bend down out of sight in the back seat. Once the Toyota was stopped, there followed the customary request for license and registration. The driver, who was the defendant Derrick Sadberry, could produce neither. Officer Michael Feeney asked Sadberry to get out of the car. Upon looking in the car, Officer Rogers noticed an open bottle of beer between the driver and passenger seats. Officer Feeney made a cursory search and found

a black 9 mm. firearm under the driver's seat. Now the other two men in the car, Mehare Daniel and Heughan, were ordered out of the car. At about that time, a detective member of a back-up team that had arrived on the scene explored under the newly vacated passenger seat and found a .22 caliber revolver. The three men were arrested and taken to the Area B-2 station for booking. It was there that the police found the drugs.

In *Commonwealth* v. *Antobenedetto,* 366 Mass. at 55, the court, expressing itself as acting under the compulsion of the opinion in *Whiteley* v. *Warden, Wyo. State Penitentiary,* 401 U.S. 560 (1971), ordered suppression of evidence found in a warrantless search of a car based on a police radio bulletin. The basis for the decision in *Antobenedetto* was that the officer who issued the radio bulletin did not have reliable information that a crime had occurred and that evidence of the crime would be found in the vehicle that the broadcast described; i.e., the person making the broadcast did not have information that would establish probable cause before a magistrate to whom an application for a search warrant might be made. If the person who made the broadcast did not have probable cause to make the search, then, the reasoning continued, the policemen who acted on the basis of the broadcast did not have probable cause for the search. *Id.* at 56. See also *Commonwealth* v. *Cheek,* 413 Mass. 492, 494-495 (1992); *Commonwealth* v. *Willis,* 415 Mass. 814, 818 (1993); *Commonwealth* v. *Berment,* 39 Mass. App. Ct. 522, 526 (1995).

We take it as a given, therefore, that the two radio broadcasts alone did not provide reasonable suspicion or probable cause for the stop and search of the defendants and their car. When they encountered the speeding car, however, the police were duty bound to stop it. See *Commonwealth* v. *Sumerlin,* 393 Mass. 127, 131 (1984), cert. denied, 469 U.S. 1193 (1985); *Commonwealth* v. *Santana,* 420 Mass. 205, 207 (1995); *Commonwealth* v. *Rivera,* 33 Mass. App. Ct. 311, 314 (1992); *Commonwealth* v. *Lantigua,* 38 Mass. App. Ct. 526, 526-528 (1995). Beyond the speeding car, the police, in deciding what next to do, could consider the inability of the driver to produce a license or registration or any of the other defendants to produce a registration; the bending movement of the rear-seat passenger as the police pulled the Toyota

over, a motion that reasonably could be taken as placing or retrieving an object beneath the driver's seat; and the broadcasts of two episodes of gunfire in the vicinity. See *Commonwealth* v. *Lantigua, supra* at 527-528.

In combination, these events and observations gave the police more than a reasonable suspicion, such as would justify an investigatory stop, that the occupants of the car were involved in the commission of a crime or crimes. *Commonwealth* v. *Lyons,* 409 Mass. 16, 19 (1990). *Commonwealth* v. *Fraser,* 410 Mass. 541, 544-545 (1991). *Commonwealth* v. *Lantigua,* 38 Mass. App. Ct. at 527-528. Pursuant to such a stop, the police could make a search of the car that was reasonable for their protection. *Commonwealth* v. *Lantigua, supra* at 528-529. A sweep under the car seats would be consistent with that concern. See *Commonwealth* v. *Silva,* 366 Mass. 402, 406-410 (1974); *Commonwealth* v. *Lyons, supra* at 19; *Commonwealth* v. *Lantigua, supra* at 528. Here the indicia of criminal conduct accumulated beyond such as would give ground to reasonable suspicion. The combination of events and observations gave the police officers probable cause to think that the three men in the car were engaged in the commission of a crime, unlawful possession of weapons being one of several likely probabilities.[2] Accordingly, they could conduct a search of the automobile consistent with their reasonable apprehension about the crime being committed. *Commonwealth* v. *Markou,* 391 Mass. 27, 29-30 (1984). See *Commonwealth* v. *Lara,* 39 Mass. App. Ct. 546, 548 (1995).

We conclude that the grounds for a stop and search of the defendants and their automobile exceeded the sole ground (the radio broadcast) underlying the search in *Commonwealth* v. *Antobenedetto,* 366 Mass. at 55-56, and that the searches of the defendants in the instant case were lawful. The order suppressing the evidence recovered in the searches is vacated. A new order is to enter denying the motion to suppress, and the case shall stand for trial.

*So ordered.*

---

[2]Driving a motor vehicle without a license, by itself, justifies an arrest without a warrant. G. L. c. 90, § 21. See *Commonwealth* v. *Lantigua,* 38 Mass. App. Ct. at 528.