## COMMONWEALTH vs. DARRELL J. HEON.

No. 96-P-1848.

Worcester. November 13, 1997. - February 4, 1998.

Present: WARNER, C.J., DREBEN, & FLANNERY, JJ.

*Search and Seizure,* Threshold police inquiry, Protective frisk. *Threshold Police Inquiry. Constitutional Law,* Search and seizure.

A police officer was justified in conducting, for his own safety, a pat-frisk of a motorcyclist whom he had stopped for speeding, in circumstances in which the motorcyclist produced a license but could not find a registration on his person and was wearing a jacket with the words "Hells Angels" on the back, a group which the officer knew to be involved in a violent ongoing feud with another motorcycle club. [256-257]

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on July 1, 1996.

A pretrial motion to suppress evidence was heard by *Neil G. Snider,* J.

An application for an interlocutory appeal was allowed by *Francis P. O'Connor,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Karen R. Burwick,* Assistant District Attorney, for the Commonwealth.

*James M. Smith* for the defendant.

DREBEN, J. Granted leave by the Supreme Judicial Court to take an interlocutory appeal (Mass.R.Crim.P. 15[b][2], 378 Mass. 884 [1979]), the Commonwealth claims that a judge in the District Court erred in granting the defendant's motion to suppress a gun found by a police officer during a pat-frisk of the defendant.

We relate the facts as they appear in the judge's memorandum of findings. On June 29, 1996, State Trooper Jaworek, alone in a marked cruiser, observed a motorcycle speeding at over eighty

miles an hour in a sixty-five mile per hour zone. He signalled the driver (defendant) to pull over. When the defendant did so, the trooper noticed that the defendant was wearing a jacket with the words "Hells Angels" on the back. The trooper had had extensive experience with motorcycle groups, including the Hells Angels, and had made numerous arrests involving such groups for motor vehicle violations, violent crimes, and drugs and weapons charges. Ninety percent of the members of the Hells Angels whom he had stopped had convictions for crimes of violence. Moreover, a feud between the Hells Angels and the "Outlaws" (a rival motorcycle club) had been going on since 1994 and, to the trooper's knowledge, was still ongoing and involved violent confrontations, usually with weapons.

The judge specifically found:

> "As the trooper approached the motorcycle, the defendant remained seated. The trooper asked for the defendant's license and registration. The defendant was cooperative and produced a valid Connecticut license. The defendant proceeded to look for his registration and was having difficulty finding it.[1] The defendant was moving his body in order to look for his registration somewhere in or on his motorcycle.[2] The trooper feared for his safety because of his knowledge about the Hells Angels. He stopped the

[1] The record does not indicate whether the registration was ultimately produced.

[2] The officer's testimony, in so far as relevant, when asked what he did when the defendant was unable to produce a registration, was as follows:

A.  "Well he was attempting to locate it and with all the movement and looking around he was doing I didn't feel comfortable so I asked him to step off the bike."

Q.  "Okay. He was looking, where was he looking for his registration? Was he looking on the bike or where?"

A.  "Well he was going through pockets and he had a, he had the vest with the logo on it, he had the jacket under that."

Q.  "Okay."

A.  "And he was pretty well layered up you know, I wasn't able to keep an eye on what exactly he was doing at that point so I asked him to step off the bike."

defendant from looking any further for his registration. He asked him to get off his motorcycle."

The trooper then conducted a pat-frisk of the defendant's jacket and felt the outline of a gun. When asked if he had a Massachusetts license to carry a firearm, the defendant replied he only had a Connecticut license. The trooper removed a .22 caliber pistol from the defendant's pocket.

The judge concluded his findings with the statement, "The Trooper's fear was based solely on the Hells Angels regalia the defendant was wearing and his knowledge of this group."

We assume for purposes of this opinion that even where, as here, there was a legitimate stop and a justified order to leave the motorcycle, see *Commonwealth* v. *Santana*, 420 Mass. 205, 212 (1995); *Commonwealth* v. *Vazquez*, 426 Mass. 99, 103 (1997), an officer is not entitled to conduct a *Terry*[3] search merely because the defendant belongs to a group which is not outlawed. This does not mean, however, that the officer could not take his knowledge of the group and of the ongoing feud into account as part of "the totality of the circumstances — the whole picture." See *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991), quoting from *United States* v. *Cortez*, 449 U.S. 411, 417 (1981).

The judge specifically found that the defendant was having difficulty finding his registration and was moving around looking for it. "Inability to produce a license or a registration reasonably gives rise to a suspicion of other offenses, such as automobile [or motorcycle] theft, and *justifies heightened precautions for the officers' own safety*" (emphasis supplied). *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995). In such circumstances, a pat search for weapons is appropriate. *Ibid.* As pointed out in *Lantigua*, "Courts cannot be oblivious to the recent escalation in the numbers of incidents reported wherein police officers have been killed or wounded while performing routine traffic functions." *Id.* at 528-529. Here, the defendant's difficulty in producing his registration, together with his belonging to a group which was then involved in a violent feud with another group, were sufficient to permit the frisk.

This is not a simple case of the search of a member of the Hells Angels. See *Commonwealth* v. *Wing Ng*, 420 Mass. 236,

[3]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

241 (1995). The trooper acted properly in stopping a speeding motorcyclist. The inference that something was amiss was reasonable when the defendant could not produce his registration. The person stopped was a member of a group which was then engaged in a violent feud. In these circumstances, the trooper, who was alone, was entitled to be concerned for his safety. His concern was reasonable and based on specific and articulable facts. The judge's ultimate finding, that the trooper's fear "was based solely on the Hells Angels regalia the defendant was wearing and his knowledge of this group," was not consistent with his other findings or with *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. at 528.

*Order allowing motion to suppress reversed.*