COMMONWEALTH vs. ANTONIO A. SANTOS, JR.

No. 04-P-631.

Bristol. September 13, 2005. - November 14, 2005.

Present: LAURENCE, KAFKER, & TRAINOR, JJ.

*Firearms. Evidence,* Firearm. *Search and Seizure,* Motor vehicle. *Practice, Criminal,* Waiver of trial by jury.

This court concluded that a police officer improperly searched a car that he had stopped for a traffic violation, where nothing about the driver or the circumstances of the stop raised reasonable concerns for the officer's safety and where the stop was not a swiftly developing encounter that precluded more routine and less intrusive means of verifying the status of the driver's license and the ownership of the car. [124-128]

COMPLAINT received and sworn to in the Taunton Division of the District Court Department on January 28, 2002.

The case was heard by *Julie J. Bernard,* J.

*Sharon Dehmand* for the defendant.

*David B. Mark,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant, Antonio A. Santos, Jr., appeals from his convictions of carrying a firearm without a license, G. L. c. 269, § 10(*a*), and possession of a firearm without a firearm identification card, G. L. c. 269, § 10(*h*). He argues that his waiver of a jury trial was ineffective and that his motion to suppress the firearm, a handgun seized from the vehicle he was driving, was improperly denied. We accept the Commonwealth's concession that a new trial is required, as the defendant neither executed nor filed a written waiver, and the motion judge failed to conduct a waiver colloquy. The only disputed issue is the propriety of the motion to suppress the handgun. We conclude that the search of the vehicle was unlawful and, therefore, reverse the order denying the motion to suppress.

We summarize the facts found by the motion judge and supplement those findings with undisputed facts from the record specifically identified below. On January 27, 2002, during the day shift, a Taunton police officer stopped the defendant for a motor vehicle violation. The defendant had run a stop sign and cut off a vehicle that had the right of way. As he approached the vehicle driven by the defendant, the officer observed the defendant sit upright from the reclined position in which he had been driving and lean forward in the driver's seat.

Upon the officer's request, the defendant identified himself, but was unable to produce a driver's license or vehicle registration. He also informed the officer that he had an active license, and he provided the officer with his date of birth.[1] With the officer observing, the defendant looked unsuccessfully through the glove compartment for the vehicle registration.

The officer was concerned that the defendant "was not who he said he was." After informing the defendant he was not under arrest, the officer handcuffed the defendant and secured him in the rear of the police cruiser.[2] The officer then approached the empty vehicle "to attempt to identify the owner thereof."[3] Immediately upon opening the driver's door, the officer observed the white handle of a handgun protruding from beneath the driver's seat. The officer secured the weapon and then arrested the defendant, transported him to the police station, and charged him with the aforementioned firearm offenses. As the officer testified, upon returning to the station he learned that the defendant did in fact have an active license and that the car belonged to the defendant's mother.

1. *Ineffective waiver.* The record shows no evidence that the

---

[1]The officer so testified.

[2]The motion judge found that the officer was "under the mistaken belief that he could not arrest [the defendant] for the offense of not having a license in [his] possession." In fact, the defendant was not an out-of-State driver, so failing to produce a license was not an arrestable offense. See *Commonwealth v. Feyenord*, 62 Mass. App. Ct. 200, 209 (2004), *S.C.*, 445 Mass. 72 (2005); G. L. c. 90, §§ 10 (driving without having a valid license), 11 (driving without having a license in possession), and 21 (defining the circumstances in which an arrest can be made without a warrant for a motor vehicle violation).

[3]He testified that paperwork might be in the glove compartment, console, visor, or door pockets.

defendant signed any written waiver of a jury trial or received the required jury waiver colloquy. See *Commonwealth* v. *Hardy*, 427 Mass. 379, 381-382 (1998). The Commonwealth concedes that these fatal errors mandate a new trial. Our review confirms the necessity of this concession. See *Commonwealth* v. *Mc-Clary*, 33 Mass. App. Ct. 678, 686 n.6 (1992), cert. denied, 510 U.S. 975 (1993). Accordingly, we turn our attention to the defendant's motion to suppress the handgun.

2. *Motion to suppress.* There is no dispute that the initial stop of the defendant's car and request for identification were proper in this case. The officer, as noted *supra*, had just observed the defendant run a stop sign and cut off a vehicle that had the right of way. "Where the police have observed a traffic violation, they are warranted in stopping a vehicle." *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995), quoting from *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980). Because "[t]he nature of the stop, i.e., for a traffic offense, defines the scope of the initial inquiry by a police officer," *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 470 (1996), the officer was entitled to request the driver's license and the vehicle registration. *Id.* at 470-471. When the defendant produced neither a license nor a vehicle registration, the officer became suspicious about the defendant's identity and the car's ownership. The Commonwealth argues, as the motion judge found, that the subsequent exit order, handcuffing, and search of the vehicle were justified as a *Terry*-type stop and search. *Terry* v. *Ohio*, 392 U.S. 1 (1968). We disagree.

" 'It is settled that in appropriate circumstances a *Terry* type search may extend into the interior of an automobile.' *Commonwealth* v. *Almeida*, 373 Mass. 266, 270 (1977). Furthermore, '[w]hen the police are justified in stopping an automobile, they may, for their safety and the safety of the public, order the occupants to exit the automobile.' *Commonwealth* v. *Santana*, 420 Mass. 205, 212 (1995). . . . To justify either the search or the order to the occupants to exit the automobile, 'we ask "whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." ' " *Commonwealth* v. *Vazquez*, 426 Mass. 99, 102-103 (1997), quoting from *Commonwealth* v.

*Santana, supra* at 212-213. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 661-662, 662-663 (1999).[4]

Such a search of the automobile must be "limited in scope to a protective end." *Commonwealth* v. *Silva*, 366 Mass. 402, 408 (1974). A search of the automobile for evidence as opposed to weapons is not authorized by *Terry* principles. See *id.* at 410; *Commonwealth* v. *Almeida*, 373 Mass. at 272; *Commonwealth* v. *Santiago*, 53 Mass. App. Ct. 567, 570 (2002).

The Supreme Judicial Court has emphasized that, given the risks officers confront in automobile stops, "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." *Commonwealth* v. *Gonsalves*, 429 Mass. at 664. See *Commonwealth* v. *Torres*, 433 Mass. 669, 673 (2001). Nevertheless, more than a "hunch" is required. *Commonwealth* v. *Hooker*, 52 Mass. App. Ct. 683, 688 (2001). "[T]o permit an officer, in the absence of any specific and articulable facts [establishing a reasonable apprehension of harm] to order the driver of a vehicle . . . to step out of the vehicle [and then conduct a search] would be to invite random and unequal treatment of motorists." *Commonwealth* v. *Gonsalves, supra*. See *Commonwealth* v. *Stampley*, 437 Mass. 323, 326 (2002).

With the exception of the defendant's failure to produce a license or registration, the officer was confronted with an unremarkable traffic stop. The fact that the traffic stop took place in a high crime area, while relevant to an objective assessment of the officer's safety, must be "considered with some caution because many honest, law-abiding citizens live and work in high crime areas." *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001). Similarly, the defendant's movement — "sit[ting] up erect from a reclined position [in which he was driving] and lean[ing] forward" — adds little to the analysis.[5] The motion judge did not find the gesture to be furtive, nor did he rely on it in denying the motion to suppress. *Id.*

---

[4]Without such reasonable apprehension of danger, the handcuffing would likewise not be permissible. See *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 328-329 (1993). This "level of police intrusiveness" must also "be proportional to the danger identified by the officer who made the stop." *Commonwealth* v. *Torres*, 433 Mass. 669, 676 (2001).

[5]Compare *Commonwealth* v. *Moses*, 408 Mass. 136, 144 (1990) (protective

at 665. Otherwise, the defendant's movements were not suspicious. And in any event, "[a] citizen is not required to sit absolutely motionless in a stopped vehicle." *Commonwealth* v. *Hooker*, 52 Mass. App. Ct. at 686. Finally, the officer was alone, but so was the defendant. Compare *Commonwealth* v. *Feyenord*, 445 Mass. 72, 76 (2005).

The failure of the defendant to produce a license and a vehicle registration is, however, significant. We have recognized that, in appropriate circumstances, the "[i]nability to produce a license or a registration reasonably gives rise to a suspicion of other offenses, such as automobile theft, and justifies heightened precautions for the officers' own safety." *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995). In this case, however, there was no other evidence to indicate that the car was stolen or criminal activity was afoot. This was also not a "swiftly developing situation" that prevented verification or disproof of the officer's suspicions regarding the defendant's identity or the ownership of the car through routine computer or radio checks. *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 325 (2001), quoting from *United States* v. *Sharpe*, 470 U.S. 675, 686 (1985). In somewhat different circumstances, we have said that "[i]f the trooper thought the use of the car unauthorized, the obvious investigatory step would be the routine one of checking to see if the car had been reported stolen." *Commonwealth* v. *Bartlett*, 46 Mass. App. Ct. at 471.[6] These ordinary checks of identity and ownership of the vehicle were apparently not performed and certainly not completed until after the exit order, handcuffing of the defendant, and search of the car.[7] Officers' actions must be "no more intrusive than necessary at each step to ef-

---

search of a vehicle allowed where the passenger ducked under the dashboard). Contrast *Commonwealth* v. *Almeida*, 373 Mass. at 271-272. In *Almeida*, a case not involving a traffic violation, a protective search of a vehicle in a high crime area was allowed where the defendant produced a driver's license, but did not immediately produce a vehicle registration, lifted a console cover only far enough to slip out a wallet, and twisted his body to the right. *Ibid.*

[6]In *Commonwealth* v. *Bartlett*, 46 Mass. App. Ct. at 469, an officer had pulled over a vehicle for speeding, and the driver had produced his license and a vehicle rental agreement in the name of another individual, not the passenger. The officer suspected drug trafficking based upon "eight innocuous observations." *Id.* at 472.

[7]The officer testified on direct examination that he never conducted a radio or

fectuate both the safe conclusion to the traffic stop and the further investigation of the suspicious conduct." *Commonwealth v. Torres*, 433 Mass. at 675. We conclude that, in these circumstances, the officer did not have a reasonable apprehension of danger when he had the defendant exit the car, put him in handcuffs, and searched the car.

Even if he did, however, the search itself must be for a protective purpose. The record here unequivocally establishes that the search was investigatory, as it was designed to uncover evidence related to the ownership of the car and the identity of the defendant, and not to search for weapons. See *Commonwealth v. Silva*, 366 Mass. at 408-410; *Commonwealth v. Kimball*, 37 Mass. App. Ct. 604, 608 (1994) (officer not allowed "to rummage" through an automobile to continue to "play his hunch" that the car was stolen); *Commonwealth v. Pacheco*, 51 Mass. App. Ct. 736, 742 (2001) (rejecting the uncertainty of identification of an arrested passenger as justification for a general exploratory search of an automobile). See also *Terry v. Ohio*, 392 U.S. at 29 (search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer"); *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (routine traffic stop does not permit the search of a car where the officer was "not satisfied with the identification furnished by the driver").

The Commonwealth, like the motion judge, relies heavily on our decision in *Commonwealth v. Lantigua*, 38 Mass. App. Ct. 526. They have read *Lantigua* too broadly. In *Lantigua*, the driver, who had exited from the car, told the officer that the registration was in the glove compartment and offered to get it. *Id.* at 527. We held there that the officer, in the interest of his own safety, could properly retrieve the registration from the place where the defendant said it would be, rather than have the defendant reenter the protective and partially concealing interior of the car, for the ostensible purpose of retrieving it himself. *Id.* at 529. See *Commonwealth v. Pagan*, 440 Mass. 62, 68 (2003).

computer check regarding the defendant's name or the car's license plate before searching the car. On cross-examination, he stated only that he could not recall doing so. When the checks were performed at the station, they verified that the defendant had an active license and that the car was owned by the defendant's mother.

Here, in contrast, the defendant had been unable to locate a registration in the glove compartment, and the officer's purpose in securing the defendant and entering the car himself, was, as he frankly testified, to search for a registration or other identifying papers in the glove compartment, over the visors, in the door pockets, and in the console. Nothing in our *Lantigua* decision should be read to sanction such general rummaging through the interior spaces of a stopped car, in a search for identifying papers.[8]

In sum, this case simply involves a driver without a license in his possession or vehicle registration in a high crime area. There was nothing else about the driver or the circumstances that raised reasonable concerns for the officer's safety as the defendant's movements were unremarkable. This was not a swiftly developing encounter that precluded more routine and less intrusive means of verifying the status of the driver's license and the ownership of the car. There was also nothing in the record to establish that the search was for protective as opposed to investigatory purposes. Without more, we conclude that the search of the car in these circumstances was not authorized to protect the officer's safety and that to allow such a search would be to invite random, unequal treatment of motorists. *Commonwealth* v. *Gonsalves*, 429 Mass. at 664.

*Judgments reversed.*

---

[8]This was also not a case of an abandoned vehicle, with no registration plate or readable vehicle identification number.