The defendant appeals from her conviction, after a jury trial, of receiving stolen property valued at over $250, G. L. c. 266, § 60. She argues that a judge erred in denying her motion to suppress evidence obtained through a warrantless search of her purse. We agree and conclude that her conviction must be reversed.
Background. We recite the relevant facts as found by the motion judge, supplemented where necessary by uncontroverted police testimony that the judge implicitly credited.[2] See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).
In December, 2015, a State trooper was dispatched to the scene of a reported disabled vehicle in a highway median strip. Upon arriving, the trooper parked ten to fifteen feet behind the vehicle, a sedan, and saw two women engaged in a "violent struggle" in its front seat. The trooper called for back-up, got out of his cruiser, approached and opened the sedan's driver's side door, and told the pair to stop fighting. They promptly complied, and he pulled the driver, later identified as the defendant, off of the other woman, later identified as Monique Jackson. He could not tell who was the aggressor. To separate the pair, the trooper ordered the defendant to get out of the sedan and stand to the rear of it, which she did. The trooper stood by her, asked if she was "okay," and offered medical treatment for her bleeding nose, but she declined.
The trooper then asked the defendant for her license or identification (ID). She replied that it was in her purse in the sedan and that she would go and get it. The trooper told her that he "didn't want her to go back to the vehicle because Miss Jackson was still seated in the front seat" and that he would get the ID out of her purse. The trooper returned to the sedan, where he saw the purse between the center console and the driver's seat. He "opened up the purse, saw identification that resembled [the defendant], took the ID, and as [he was] retrieving that ID, [he] saw multiple other IDs within the purse."
He returned to the defendant with the ID and asked if it was hers. The defendant replied, "No, that's not my ID." The trooper pointed out that the card bore a State ID number, a name, and a date of birth, and asked, "Well, what is it?" The defendant replied that "it was just a card and it was not an ID." By then, back-up officers had arrived. The trooper again asked if the defendant needed medical treatment, and again she declined. She was not in handcuffs. She told the trooper that she and Jackson had been engaged for about a year, had been fighting over some text messages sent by another woman, and were trying to get a phone from each other. The trooper learned the defendant's name and date of birth and determined that she had no driver's license. Both the defendant and Jackson were arrested for assault and battery; Jackson was placed in the trooper's cruiser, and the defendant in a separate cruiser, for transport to a State police barracks.
The trooper then "went through [the defendant's] purse, before placing it in [his] own cruiser." Also, the sedan was subjected to an inventory search. The inventory report did not list the purse.
Upon arrival at the barracks, the defendant was informed of her Miranda rights and indicated that she understood them. The trooper then "asked her about the IDs that were found in her purse." She replied that "they weren't ID, IDs at all. They were just cards with information on it," and that "they were just fake" and "made from a machine."
The judge denied the motion to suppress the evidence obtained from the purse, concluding that it was not unreasonable for the trooper to have retrieved the defendant's ID from the purse. The judge denied the motion to suppress the defendant's statements at the scene and at the barracks.
The sedan was also found to contain (1) merchandise bearing tags from T.J. Maxx and Marshalls retail stores; (2) slips showing that merchandise had been returned to those stores, without purchase receipts, in exchange for gift cards; and (3) gift cards from those stores. The Commonwealth's theory was that the evidence showed a scheme in which merchandise was stolen and then returned without receipts, using fake IDs, in exchange for gift cards, which could then be sold. The defendant was eventually charged, among other things, with receiving stolen property valued at over $250 and with assault and battery. After a jury trial before a different judge, the defendant was found guilty of receiving stolen property, and not guilty of assault and battery.
Discussion. 1. Motion to suppress evidence from purse. In reviewing a ruling on a motion to suppress, we accept the motion judge's subsidiary findings unless clearly erroneous, see Commonwealth v. White, 374 Mass. 132, 137 (1977), aff'd, 439 U.S. 280 (1978), and make an "independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found.' " Commonwealth v. Haas, 373 Mass. 545, 550 (1977), quoting from Brewer v. Williams, 430 U.S. 387, 403 (1977).
The defendant argues that the judge erred in ruling that it was reasonable for the trooper to engage in a warrantless search by retrieving the defendant's ID from her purse and viewing the other IDs inside it. We agree.
An intrusion into a closed container inside an automobile is a search. See Commonwealth v. Podgurski, 386 Mass. 385, 389 (1982), cert. denied, 459 U.S. 1222 (1983). A warrantless search is presumptively unreasonable under both the Federal and State Constitutions; the burden is on the Commonwealth to show that the search falls within a narrow class of permissible exceptions to the warrant requirement. See Commonwealth v. Craan, 469 Mass. 24, 28 (2014).
Here, the motion judge relied on Commonwealth v. Lantigua, 38 Mass. App. Ct. 526 (1995), to conclude that the trooper's search of the defendant's purse was reasonable under the circumstances. In Lantigua, the police pulled over a car for a traffic violation, ordered the driver out of the car, and asked him for his license and registration. Id. at 527. When the driver stated that he did not have a license but offered to get the registration from the glove compartment, it was reasonable for the police to enter the passenger compartment, including the glove compartment, to conduct a weapons search of the areas accessible to the driver prior to his reentering to retrieve the registration. Id. at 528. This was permissible based "on the particular danger to an officer when the person he is investigating is seated in a car with his movements concealed from the officer's view." Ibid. And, as a less intrusive alternative to such a weapons search, it would also have been reasonable for an officer to "determine from the driver where in the vehicle the registration was located and then enter the car for the limited purpose of getting it himself." Id. at 529.
In this case, however, although it was reasonable for the trooper not to allow the defendant to retrieve her identification from her purse in the car -- as this would have risked a resumption of her fight with Jackson -- there was no need for the trooper to search the purse himself. Unlike the glove compartment in Lantigua, the purse here was portable. It could have been retrieved by the trooper and brought to the defendant so she could retrieve her ID herself. And she would have done so in full view of the trooper, thus obviating the "particular danger to [the] officer" that arises "when the person he is investigating is seated in a car with [her] movements concealed from the officer's view." Id. at 528.
We recognize, of course, that, when asking for identification, "the police cannot safely allow a detained suspect to reach inside a container that they reasonably fear may contain a weapon." Commonwealth v. Pagan, 440 Mass. 62, 68 (2003). Here, however, the trooper did not identify, nor did the judge find, any reason to believe there was a weapon in the purse.[3] Indeed, the trooper had left the purse in the sedan -- within easy reach of the defendant's co-combatant, Jackson -- during his initial questioning of the defendant, and again after he retrieved her ID. Accordingly, we cannot conclude that the search here was "for a protective purpose." Commonwealth v. Santos, 65 Mass. App. Ct. 122, 127 (2005). Rather, "the search was investigatory, as it was designed to uncover evidence related to ... the identity of the defendant, and not to search for weapons." Id. at 127. It was therefore unlawful.[4]
a. Inevitable discovery. The Commonwealth argues that the fake IDs in the purse inevitably would have been discovered by lawful means, as a result of either the inventory search of the sedan or an inventory search of the defendant during booking. See Commonwealth v. O'Connor, 406 Mass. 112, 115-119 (1989) (discussing inevitable discovery rule). Applying that rule "requires a two-step analysis which focuses, first, on the question of inevitability, and, second, on the character of the police misconduct." Commonwealth v. Perrot, 407 Mass. 539, 546 (1990). "[T]he Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence and, once the relevant facts have been proved, that discovery by lawful means was 'certain as a practical matter.' " Id. at 547, quoting from O'Connor, 406 Mass. at 117.
The Commonwealth has not met that burden here. As to the inevitability of discovery during the inventory of the sedan, it suffices to note that the trooper did not leave the purse in the sedan; rather, after searching it again, he took it with him in his cruiser. It was not in fact found during the inventory of the sedan, as shown by its absence from the car inventory report admitted at the suppression hearing.[5] And the judge made no finding that, had the trooper not searched the purse at the scene, he inevitably would have left it in the sedan where it would have been searched as part of a car inventory. Nor is such a conclusion required by the evidence. See Commonwealth v. McAfee, 63 Mass. App. Ct. 467, 480 & n.13 (2005).
The Commonwealth's fallback argument is that discovery was inevitable during an inventory search incident to the defendant's booking at the barracks. But even if we assume (despite the absence of evidence on the issue) that such an inventory search occurred or would have occurred here, the record contains no written procedures governing the conduct of such searches. Thus we cannot determine whether such a search would have been lawful as a general matter, see Commonwealth v. Rostad, 410 Mass. 618, 619-620 (1991), or whether any such lawful search would have extended to the contents of closed containers. See id. at 620-622. The court has "made it clear that, if police open a closed container during an inventory search in the absence of a specific written procedure requiring them to do so, then any evidence they discover in the container must be suppressed." Id. at 622, quoting from Commonwealth v. Garcia, 409 Mass. 675, 684-685 (1991).
In sum, we cannot be "certain as a practical matter" that the lawful discovery of the fake IDs contained in the defendant's purse was inevitable under either of the Commonwealth's theories. O'Connor, 406 Mass. at 117. Therefore, that evidence should have been suppressed.[6] And, consequently, the defendant's statements made at the scene and the barracks in response to the trooper's questioning about the IDs should also have been suppressed; as the defendant argued, they were fruits of a poisonous tree.[7] See Commonwealth v. DaSilva, 56 Mass. App. Ct. 220, 228 n.9 (2002).
b. Effect of error. Finally, we reject the Commonwealth's argument that any error in admitting the evidence seized as a result of the search of the purse was harmless beyond a reasonable doubt. We cannot agree that evidence concerning the fake IDs was "cumulative"; there was no other evidence of any fake IDs. And the testimony about the IDs from the purse was an important part of the Commonwealth's case. A retail theft investigator for the T.J.X. companies (which include T.J. Maxx and Marshalls) testified that he was able to match the information on the fake IDs to numerous return-without-receipt transactions in a T.J.X. database totaling "thousands to hundreds of thousands of dollars." We are not "satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdict[ ]." Commonwealth v. Tyree, 455 Mass. 676, 701 (2010).[8]
2. Prior bad acts evidence. Because the issue may arise at any retrial, we comment briefly on the defendant's claim that the trial judge abused her discretion in admitting what the defendant characterizes as prior bad acts testimony from the T.J.X. retail theft investigator.[9] As just discussed, the investigator testified that he was able to match the information on the fake IDs to numerous return-without-receipt transactions in a T.J.X. database. This allowed the jury to infer that the defendant had been involved in those transactions, which the Commonwealth sought to portray as fraudulent and as showing the defendant's knowledge that the merchandise found in the sedan was stolen. The defendant argues that this evidence of her involvement in prior fraudulent returns was inadmissible because, on a variety of grounds, it was more prejudicial than probative. See Mass. G. Evid. § 404(b)(2) (2018).
Because of our conclusion that the fake IDs should have been suppressed, it does not appear that the T.J.X. investigator could repeat this precise testimony at any new trial. Apart from the IDs, however, the investigator also testified about various receipts and gift cards that the police had found in the defendant's purse or in the sedan. To the extent that the Commonwealth seeks to elicit such testimony at any new trial, and can show that those items were not found in the purse, see note 7, supra, then the trial judge would have to perform a new balancing of probative value against unfairly prejudicial effect. We express no view on whether such evidence would be admissible.
Conclusion. The judgment on the charge of receiving stolen property is reversed, and the verdict is set aside.
So ordered.

The motion to suppress evidence, and a companion motion to suppress statements, addressed numerous issues; we discuss only those facts relevant to the issues on appeal.

For this reason, the Commonwealth gains nothing from its reliance on Commonwealth v. Lopes, 455 Mass. 147, 160 (2009) (after ordering driver out of car based on reason to believe he was armed and dangerous, police could themselves retrieve driver's identification from inside car).

The judge's decision also stated that the defendant "indicated where her identification was" and "did not object" to the trooper retrieving it, citing Commonwealth v. Voisine, 414 Mass. 772, 783 (1993). To the extent that this constituted an implicit finding or ruling that the defendant had voluntarily consented to the search of her purse, it was error. In Voisine, a tenant "testified that she knew that she did not have to let the police into her apartment, but chose to do so anyway," and it was immaterial that she "communicated her consent by pointing in the direction of the bedroom where the defendant was hiding, rather than by speaking." Ibid. Here, in contrast, the defendant told the trooper that her ID was in her purse in the sedan and that she would go get it, at which point the trooper informed her that he would do so himself. There was no expression of consent, but at most, "mere 'acquiescence to a claim of lawful authority,' " which is insufficient. Ibid., quoting from Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976).

A copy of the State police vehicle inventory procedures was also admitted at the hearing.

We also cannot accept the judge's conclusion, that the trooper's second search of the purse just before he placed it in his cruiser, was a lawful search incident to arrest. As an initial matter, it was not inevitable that the trooper would have performed that second search had he not observed multiple IDs during his first, impermissible search. In any event, under G. L. c. 276, § 1, the trooper could conduct a search incident to arrest "only (1) for the purpose of seizing evidence of the crime for which the arrest has been made in order to prevent its destruction or concealment or (2) for the purpose of removing any weapon the person arrested might use to resist arrest or to escape." Commonwealth v. Blevines, 438 Mass. 604, 607 (2003), quoting from Commonwealth v. Wilson, 389 Mass. 115, 118 (1983). Evidence found in a search exceeding those parameters is inadmissible. Commonwealth v. Madera, 402 Mass. 156, 159 (1988). There was no reason to believe that the purse contained any evidence of the assault and battery, nor would the defendant, who was already in a separate cruiser, have been able to use any weapon that might be in the purse to resist arrest or to escape.

Although this makes it unnecessary to reach the defendant's separate argument that her statements at the scene should have been suppressed as the product of a custodial interrogation without benefit of Miranda warnings, we see no merit in that argument. Under the factors set forth in Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001), the defendant was not in custody at the time. See Commonwealth v. Cawthron, 479 Mass. 612, 617-618 (2018).

Because the prejudicial effect of the tainted fake ID evidence requires a reversal of the conviction, we do not address the Commonwealth's argument that the admission of other evidence found in the purse -- receipts and gift cards -- was harmless because it was cumulative of similar evidence lawfully found elsewhere in the sedan. The record appears insufficient to determine how much of this evidence was found in the purse versus elsewhere, and thus we cannot determine whether it was cumulative.

At oral argument, the defendant acknowledged that her objection was not to the investigator's expert testimony about how return-without-receipt theft schemes work, but only to his fact testimony tying the evidence in this case to the existence of such a scheme.