Commonwealth *v.* Mendes.

COMMONWEALTH *vs.* SHELBY MENDES.

No. 08-P-1349.

Bristol. June 5, 2009. - October 13, 2009.

Present: MILLS, GREEN, & SIKORA, JJ.

*Firearms. Evidence,* Firearm, Inference, Prior misconduct, Cross-examination. *Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses.

At the trial of a complaint charging the defendant with firearms violations, the evidence was sufficient to establish that the defendant knowingly possessed the firearm in question [392-394] and discharged it within 500 feet of buildings that were "in use" under the meaning of G. L. c. 269, § 12E [394-395].

At a criminal trial, any error in the admission of testimony that the defendant's fingerprints were on file with the police did not create a substantial risk of a miscarriage of justice, given the strong and one-sided evidence of guilt. [395]

At the trial of a criminal complaint, the judge's admission in evidence of a ballistics certificate without providing the defendant the opportunity to cross-examine the testing ballistician, although error, did not alter the verdict, given the strength of the independent evidence of the operability of the firearm in question. [396-397]

COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on February 5, 2007.

The case was tried before *Therese M. Wright*, J.

*Sarah G.J. Clymer* for the defendant.

*Shoshana E. Stern*, Assistant District Attorney, for the Commonwealth.

SIKORA, J. At the conclusion of a two-day trial, a District Court jury convicted the defendant, Shelby Mendes, of the offense of carrying a firearm without a license in violation of G. L. c. 269, § 10(*a*); possessing a firearm without a firearm identification card in violation of G. L. c. 269, § 10(*h*); discharging a firearm within 500 feet of a building in violation of G. L.

c. 269, § 12E; and carrying a firearm with ammunition in violation of G. L. c. 269, § 10(*n*).

The defendant now appeals from these convictions, upon claims of (1)(a) insufficient evidence of carrying a firearm and ammunition without a license; (1)(b) insufficient evidence of discharging a firearm within 500 feet of a building; (2) prejudicial admission of testimony that the defendant's fingerprints were on file with the police; and (3) the admission of a ballistics certificate in violation of his constitutional right to confrontation. For the following reasons, we affirm.

*Background.* In the light most favorable to the Commonwealth, the evidence permitted the jury to find as follows.[1] At roughly 1:18 A.M. on February 4, 2007, police Officer Megan Toromino was on patrol in downtown New Bedford when she heard three gunshots near the intersection of Pleasant and Union Streets. The Legacy nightclub is in close proximity to this intersection. The vicinity of the Legacy includes multiple bars, restaurants, and clubs on both sides of Union Street.

Officer Toromino continued down Union Street and reported the incident by radio. She proceeded one block down Union Street to the corner of Sixth Street where she observed the defendant running toward her on Union. When the defendant saw the officer, he turned right onto Sixth Street and hid behind a Land Rover vehicle. Toromino pulled her cruiser up to the Land Rover and through its glass saw the defendant bobbing and ducking. After a few moments, he ran around the front end of the Land Rover and into the middle of the street. Toromino then jumped out of her cruiser and ordered the defendant to stop. The defendant halted in the middle of the street. As Toromino came out of her vehicle, she noticed the smell of gunpowder. The defendant then told Officer Toromino that someone had been shot in front of the Legacy.

Toromino told the defendant to remain in place and walked toward the Legacy. As she was proceeding, she informed Officer Hogan that someone had been shot at the Legacy. Hogan had been close behind Toromino as she turned onto Sixth Street.

---

[1]We narrate the evidence in the view most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979); *Commonwealth* v. *Townsend*, 453 Mass. 413, 427 (2009).

As Toromino now ran toward the Legacy, Hogan observed the defendant turn around and run between a sedan and a minivan parked in front of the Land Rover. Hogan left the defendant alone and blocked off Union Street at Seventh Street. From that intersection, he proceeded to the Legacy to assist Toromino in the search for a victim. About thirty seconds had elapsed from the time of Toromino's transmission to the moment when Hogan blocked off Union Street at Seventh Street.

At about the same time, State Trooper Paul Gifford responded and arrived at the intersection of Sixth Street and Union Street. Gifford met Toromino at the corner and received her information of a shooting at the Legacy. Gifford also witnessed the defendant move by a couple of car lengths up Sixth Street toward the corner of Union Street. Officers Viera and Feliciano, who responded within forty to sixty seconds of Toromino's transmission, also observed the defendant walking on Sixth Street toward Union Street. Gifford witnessed the defendant coming from the area of the third vehicle, a minivan, along Sixth Street. Gifford asked the defendant to stop, and he then stayed with him until other officers arrived. He told the other officers that he had seen the defendant come from an area near the minivan.

Officer Viera then searched the area and found a revolver underneath the minivan. It was located about one foot from the curb, under the mid-section of the minivan, on the passenger side. The recovered firearm smelled as if it had recently been fired. It contained two live rounds and three spent shell casings. The officers then placed the defendant under arrest.

At around 2 A.M. at the station house, Detective Robert Gonneville performed a gunpowder residue test on the defendant. The results returned negative. The police did not find the defendant's fingerprints on the revolver. At trial the prosecution introduced, without objection, a ballistics certification of the working condition of the revolver.

*Discussion.* 1. *Sufficiency of the evidence of possession.* For a claim of insufficient evidence, the standard of review is "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged . . . ." *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Cir-

cumstantial evidence is competent to establish guilt beyond a reasonable doubt, *Commonwealth* v. *Rojas*, 388 Mass. 626, 629 (1983), and reasonable inferences may be drawn from the evidence. *Commonwealth* v. *Reaves*, 434 Mass. 383, 389-390 (2001). Inferences drawn by the jury need only be reasonable and possible, and not necessary or inescapable. *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980).

To sustain a conviction under G. L. c. 269, § 10(*a*), the Commonwealth must prove that the defendant (1) knowingly (2) had in his possession (3) a firearm (4) without a license. *Commonwealth* v. *Duncan*, 71 Mass. App. Ct. 150, 153 (2008). Here, the defendant claims that there was insufficient evidence to establish his possession of the firearm. We disagree. The aggregate evidence presented by the Commonwealth permitted the jury to draw the inferences necessary to find that the defendant knowingly had possession of the firearm.[2] The evidence supporting those inferences included (i) the defendant's close proximity to the sounds of the shots; (ii) his apparent flight from the direction of the sounds; (iii) Officer Toromino's detection of the smell of gunpowder as she confronted the defendant at the corner of Union and Sixth Streets; (iv) the defendant's assertion that someone had been shot at the Legacy nightclub; (v) the defendant's presence for several minutes near the minivan, beneath which the police found the firearm; (vi) Officer Toromino's observation of the defendant bobbing and ducking behind the Land Rover, viewable as acts of apparent evasion or an attempt to hide the weapon; (vii) the three empty shell casings found in the revolver housing matching the number of shots heard by Officer Toromino; and (viii) Officer Viera's detection of the aroma of a recent firing.

The defendant argues that the evidence failed to demonstrate that he possessed the firearm. He points out that his fingerprints did not appear on the revolver and that the gunpowder residue test came back negative. Nonetheless, the net evidence was sufficient to warrant reasonable inferences amounting to a finding of guilt beyond a reasonable doubt. The evidence need only permit the finding beyond a reasonable doubt; it need not compel it. See *Commonwealth* v. *Latimore*, 378 Mass. at 677.

---

[2] The defendant does not contest the absence of a license and firearm identification card.

This case presents facts similar to those of *Commonwealth* v. *Duncan*, 71 Mass. App. Ct. at 151-154.[3] In that instance, officers arrived moments after the sound of shots and encountered a group of individuals acting suspiciously. *Id.* at 151-152. The group disappeared behind a fence and then emerged to be stopped and frisked by the officers. *Id.* at 152. The police then searched the area behind the fence and found two firearms, both hot to the touch and completely dry, in a garbage can containing otherwise wet trash. *Ibid.* This court concluded that the evidence permitted the jury to infer that the group as a whole had actually or constructively possessed the handguns. *Id.* at 153-154. The court noted the officers' quick response time and the warmth of the discarded weapons. *Id.* at 153. It was also reasonable for the jury to infer from the absence of other persons and from the defendants' behavior that they had sought to conceal the firearms from the police through movement behind the fence and placement of the handguns in the trash cans. *Id.* at 153-154.

Here, the jury could reasonably infer that the defendant had carried and fired the revolver, had attempted to flee along Union Street, had turned onto Sixth Street, and had discarded the handgun beneath the minivan as he observed the approach of multiple police officers.

2. *Discharge of a firearm within 500 feet of a building.* The defendant argues that the Commonwealth did not establish beyond a reasonable doubt the point or points of the discharge of the three shots necessary for proof of the 500-foot spatial element of the crime. While the Commonwealth cannot pinpoint the exact locations of the discharge, the radius of less than 500 feet from the points of discharge extending to multiple buildings in use is reasonably inferable from (a) the blackboard map used during trial and within sight of the jury; (b) testimonial descriptions of the area as a "high volume" section of Union Street with bars and clubs on both sides; (c) the description of nearby buildings within "sidewalk distance" of the street; and (d) the description by Officer Toromino of the area as mostly commercial and dotted with nearby nightclubs.

---

[3]The *Duncan* case presented a question of constructive possession of nearby abandoned handguns by multiple defendants. Our case concerns actual possession by a single defendant. Nonetheless, the similarity of the circumstantial evidence furnishes a strong analogy.

The defendant argues also that the Commonwealth presented no evidence to show that the nearby buildings were "in use" at the time of the shots.[4] With respect to the meaning of the phrase "in use" in G. L. c. 269, § 12E, we construe the words to mean "in use" at any time of the day and not at the precise moment of the discharge of the shots here between 1 and 2 A.M. We interpret the statute to protect the potential occupants of active buildings throughout the whole day and not simply within their formal business hours. Cleaning crew members, late night workers, and any other persons innocently within an active building at any time of the day warrant protection against the use of firearms in settled areas.

3. *Reference to defendant's "prints on file."* Detective Robert Gonneville testified about the administration and results of a gunpowder residue test conducted on the defendant's hands. When questioned whether he had performed any other procedures, he testified: "No. I already had his prints on file." The defendant argues that the admission of this testimony was improper because it suggested that the defendant had a prior criminal record. At the time of the testimony, defense counsel did not object. Because the contention appears for the first time on appeal, we consider whether the testimony creates a substantial risk of a miscarriage of justice.

Placing the error against the totality of the evidence, we conclude that the reference did not cause or materially influence the guilty verdicts. See *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). The inculpatory evidence was cogent and leaves no reasonable possibility that the jury's verdict would have been different in the absence of Detective Gonneville's reference to the defendant's fingerprints. "Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). Here, any error in the admission of the statement did not create a substantial risk of a miscarriage of justice.[5]

---

[4]In pertinent part, G. L. c. 269, § 12E, as appearing in St. 1972, c. 261, provides, "Whoever discharges a firearm . . . within five hundred feet of a dwelling or other building in use . . . shall be punished . . . ."

[5]While the error here did not create a substantial risk of a miscarriage of justice, police officers must be wary of testimony indicating prior knowledge

4. *Admission of the ballistics certificate.* The defendant argues that the admission of the ballistics certificate violated his right to cross-examine the testing ballistician and thereby his right of confrontation under the Sixth Amendment to the United States Constitution announced in *Crawford* v. *Washington,* 541 U.S. 36 (2004), and under art. 12 of the Declaration of Rights of the Massachusetts Constitution.

In *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009), the United States Supreme Court concluded that the admission of laboratory certificates of drug quality and quantity without the availability of responsible analysts for cross-examination violated a defendant's Sixth Amendment right to confrontation. The United States Supreme Court vacated the judgment of this court in *Commonwealth* v. *Morales,* 71 Mass. App. Ct. 587, 588-589 (2008), a case involving the admission of a ballistics certificate, and remanded the case to this court in light of the *Melendez-Diaz* decision. See *Morales* v. *Massachusetts,* 129 S. Ct. 2858 (2009).

Trial counsel did not preserve the error by objection. Trial occurred on April 30 and May 1, 2007. As of that time, the Supreme Judicial Court had held that the *Crawford* rule did not apply to the admission of drug certificates in lieu of an analyst's testimony. *Commonwealth* v. *Verde,* 444 Mass. 279, 283-284 (2005). The United States Supreme Court granted certiorari in *Melendez-Diaz* on March 17, 2008. Our court released the *Morales* decision on April 22, 2008.

This chronology creates a question about the applicable standard of appellate review. In the usual case of an unpreserved error, the test for a substantial risk of a miscarriage of justice is whether we can say that the wrongly admitted evidence did not cause or materially influence the verdict of guilt. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 (1999). For that purpose we would measure the error in the totality of the evidence and determine whether the properly admitted evidence independently permitted a finding of guilt beyond a reasonable doubt. See *Commonwealth* v. *Platt,* 440 Mass. 396, 401 (2003).

of, or involvement with, a defendant. In the absence of a valid purpose, such a reference can cause a prejudicial effect outweighing even substantial inculpatory evidence.

Alternatively, we could assume that trial counsel could not reasonably have anticipated the result of *Melendez-Diaz*, should not be held to a standard of "clairvoyance," and should not be deemed to have waived or wrongly omitted an objection to the offer of the certificate. See *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 284 (1995), citing *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990). We would hypothesize a proper objection and more stringently "evaluate the admission of constitutionally proscribed evidence to determine whether it was harmless beyond a reasonable doubt." *Commonwealth* v. *Nardi*, 452 Mass. 379, 394 (2008). See *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999).

In the circumstances of a trial after the *Verde* decision but before the allowance of certiorari in the *Melendez-Diaz* case, the Supreme Judicial Court has recently left open the applicability of the "clairvoyance" standard. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 830 (2009). Here, as there, a choice of standard is unnecessary. Viewed under the lens of either an unpreserved error inspected for substantial risk of a miscarriage of justice, or a preserved error examined for harmlessness beyond a reasonable doubt, the admission of the ballistics certificate would not alter the verdict. The strength of the independent evidence of the operability of the handgun shows beyond a reasonable doubt the harmlessness of the admission of the certificate. That independent evidence included testimony of three audible shots, the three empty casings, and the smell of gunpowder. That information amply supported the working condition of the weapon. See *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991). The evasive actions of the defendant and the close proximity of the firearm in time and place to his presence in the street connected him to the weapon and reinforced the verdicts.

*Conclusion.* For these reasons we conclude that none of the asserted errors requires reversal of the convictions.

*Judgments affirmed.*