COMMONWEALTH *vs.* MARIO CHERY. No. 07-P-1198. October 27, 2009. *Firearms. Constitutional Law*, Confrontation of witnesses. *Words*, "Firearm," "Ammunition."

The defendant was convicted of one count of unlawful possession of a firearm and one count of unlawful possession of ammunition in violation of G. L. c. 269, § 10(*h*), on the basis of his possession of a firearm and ammunition seized from a locked safe inside his residence.[1] As relevant here, the definition of "firearm" for purposes of § 10(*h*) is "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches . . . ." G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8. As relevant here, the definition of "ammunition" for purposes of § 10(*h*) is "cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun."[2]   G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8.

---

[1]General Laws c. 269, § 10(*h*), as appearing in St. 2006, c. 48, § 6, provides in relevant part: "Whoever owns, possesses or transfers a firearm, rifle, shotgun or ammunition without complying with the provisions of section 129C of chapter 140 shall be punished by imprisonment in a jail or house of correction for not more than 2 years or by a fine of not more than $500." General Laws c. 140, § 129C, as appearing in St. 1973, c. 892, § 3, provides, subject to certain exceptions that do not apply here, that "No person. . . . shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearm identification card . . . ."

[2]The defendant contends that there was insufficient evidence that he had possession of the firearm and ammunition to support his convictions. See *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 801 (1992) ("Possession is the intentional exercise of control over an item"). This contention is without merit. Not only was the safe in the defendant's apartment, he told police that the safe belonged to him; he described it as "his" safe, and he accurately described the contents in detail; the police only obtained the key to the safe from his girlfriend after he complained to them that she "had a key to his safe and he wanted that back." This evidence was sufficient to allow a reasonable juror to find that the defendant possessed the gun and the ammunition, and there was suf-

Two ballisticians' certificates were introduced in evidence, over objection, to prove (1) the element of the firearm offense that the firearm was one "from which a shot or bullet can be discharged," and (2) the element of the ammunition offense that the ammunition was "designed for use in" a firearm. Other than a statement that the affiant had testified and been qualified as a firearms expert in the Suffolk Superior Court and the United States District Court and had examined the evidence at issue, the body of the firearm certificate states only "Submitted to this unit on 11/28/2005 and having successfully test fired a shot, it is in my opinion a firearm as defined in Chapter 140, Section 121." The ammunition certificate is similar, but it states "Submitted to this unit on 11/28/2005[.] It is in my opinion AMMUNITION as defined in Chapter 140, Section 121."[3] The ballistician who signed both certificates did not testify, nor was this a circumstance in which the ballistician was unavailable to testify at trial and the defendant had a prior opportunity to cross-examine him. The defendant objected to the introduction of both certificates.[4]

As the Commonwealth acknowledges, in light of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009), the admission of these ballistics certificates without the live testimony of the certifying ballistician violated the defendant's constitutional rights under the confrontation clause of the Sixth Amendment to the United States Constitution.

As to the firearm charge, the Commonwealth argues that the error in the introduction of the firearm certificate was, nonetheless, harmless beyond a reasonable doubt. See *Commonwealth* v. *Rodriguez, ante* 235, 241 (2009), and cases cited (judgment must be reversed unless the error is "harmless beyond a reasonable doubt"). Under that standard, "[t]he essential question is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990). See *Chapman* v. *California*, 386 U.S. 18, 24 (1967).

With respect to the firearm charge, the firearm certificate was essential to the conviction. It was the only evidence from which the jury could have found the gun operable beyond a reasonable doubt. For, although the gun itself was

ficient evidence corroborating the defendant's incriminatory statements to satisfy the corroboration doctrine, which we have assumed applies to possession offenses like those at issue here. See *Commonwealth* v. *Hubbard*, 69 Mass. App. Ct. 232, 235-236 (2007).

[3]We note the unusual phrasing in each certificate and that the ammunition certificate does not describe any testing done on the ammunition. The defendant does not argue that either certificate is legally deficient on nonconstitutional grounds, for example because it may lack sufficient foundation, contain a legal opinion that the ballistician was not qualified to offer, or offer an opinion on an issue ultimately to be determined by the jury.

[4]The prosecutor placed both documents before a single witness for purposes of their introduction and said, "And I place two documents in front of you, and can you tell the Members of the Jury what those documents are." The witness began to answer, saying, "Yes. This is a ballistic's [*sic*] unit certified form stating that this gun was fired." At that point, defense counsel interrupted, saying "I . . . object . . . on *Crawford* v. *Washington*[, 541 U.S. 36 (2004)]. No one's here to testify to that." (*Crawford* announces the confrontation clause rule applied by the Supreme Court in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 [2009]). The judge overruled the objection. Fairly read, this objection pertained to the introduction of both certificates.

introduced in evidence, as this court has observed, "the mechanisms of guns are not so universally familiar that jurors, simply by looking at one, can tell whether it works." *Commonwealth v. Nieves*, 43 Mass. App. Ct. 1, 3 (1997).[5] And indeed, the prosecutor argued, "we know that the firearm works. . . . Does it work? It's a workable firearm. It will fire . . . . It has been tested, and also, Ladies and Gentlemen, with the magazine that holds the ammunition in the firearm."[6] The admission of the firearm certificate was not harmless beyond a reasonable doubt. Accord *Commonwealth v. Brown, ante* 361, 363-364 (2009).

As for the ammunition charge, the Commonwealth argues that the defendant's objection to the ammunition certificate was not preserved and that the introduction of that certificate did not create a substantial risk of a miscarriage of justice. We have concluded, however, that the objection on Sixth Amendment grounds to the ammunition certificate, as well as the objection to the firearm certificate, was properly preserved, see note 4, *supra*, and therefore we review the record to determine whether the error in its admission was harmless beyond a reasonable doubt.

It is true that the ammunition itself was introduced, but the prosecutor relied on the assertion that "the ammunition is real," based on "test[ing]" performed by the examiner. In contrast, the only testimony about what had actually been fired from the gun indicated that those shots had been fired with "police ammo."[7] In this case, even assuming that the ammunition itself could give rise to an inference that it was "designed for use in" a firearm sufficient to support a conviction, see *Commonwealth v. Mendes*, 44 Mass. App. Ct. 903, 904 (1997), a question we do not decide, we cannot say with assurance that the certificate stating that it was, indeed, so designed had no effect on the jury or might not have contributed to the verdict.

Consequently, the judgments must be reversed, the verdicts set aside, and the case remanded for further proceedings consistent with this opinion.[8]

*So ordered.*

*Rose E. King* for the defendant.

*Janis DiLoreto Noble*, Assistant District Attorney, for the Commonwealth.

---

[5]See *Commonwealth v. Nieves, supra* at 3-4 ("in the absence of some evidence of capacity to discharge a bullet, such as that the gun was fired, the manner it was used, the ammunition inside, the testimony of persons who handled the gun, testimony of persons familiar with guns, or a ballistics certificate, the evidence is insufficient to put to the jury the question of fact, on proper instruction, whether the gun in question is capable of discharging a bullet"). In this case, no evidence was introduced that the gun was loaded when it was seized. Rather, the officer testified that he found a magazine separate from the gun in the safe, and no testimony was given regarding whether the magazine was loaded when it was discovered. Compare *Commonwealth v. Fancy*, 349 Mass. 196, 204 (1965) (reasonable for jury to infer that loaded gun capable of discharging a bullet). Of course, even the presence of other evidence sufficient to support a verdict would not by itself necessarily demonstrate that an error in the admission of evidence was harmless beyond a reasonable doubt.

[6]The firearms certificate actually stated with regard to the gun, "NO MAGAZINE."

[7]Despite the statement by the prosecutor, the ammunition certificate does not state that the ammunition was tested. See note 3, *supra*.

[8]With respect to double jeopardy concerns, see *Kater v. Commonwealth*, 421 Mass. 17, 18 (1995).