COMMONWEALTH *vs.* WILLIAM RIVERA.

No. 08-P-1180.

Middlesex. October 13, 2009. - February 23, 2010.

Present: RAPOZA, C.J., DUFFLY, & CYPHER, JJ.

*Firearms. Motor Vehicle,* Firearms. *Practice, Criminal,* Confrontation of witnesses, Assistance of counsel. *Constitutional Law,* Confrontation of witnesses, Assistance of counsel, Search and seizure. *Evidence,* Authentication, Ballistician's certificate, Firearm. *Search and Seizure,* Automobile, Protective frisk.

At the trial of a criminal complaint charging possession of a firearm without a license and possession of a loaded firearm, the erroneous admission in evidence of a ballistics certificate, without testimony from a ballistics expert, in violation of the defendant's constitutional right of confrontation, required reversal of the defendant's convictions, where the Commonwealth sought to prove, through near-total reliance on the certificate, that the gun in question was a firearm as defined in G. L. c. 140, § 121, and it was apparent that there was a reasonable possibility that the certificate might have contributed to the convictions. [305-309]

At the trial of a criminal complaint charging, inter alia, possession of a firearm without a license, the judge, in denying the defendant's pretrial motion to suppress a gun found by police during a traffic stop of a motor vehicle driven by the defendant, did not err in finding that the defendant made furtive gestures inside the vehicle after the stop, giving the police a reasonable suspicion of danger that justified their search of the area around the driver's seat of the vehicle. [309-310]

COMPLAINTS received and sworn to in the Lowell Division of the District Court Department on May 5 and December 14, 2006.

A pretrial motion to suppress evidence was heard by *James H. McGuinness,* J.; the cases were tried before *William E. Melahn,* J., and a motion for a new trial, filed on April 16, 2008, was heard by him.

*Valerie A. DePalma* for the defendant.

*Susanne R. Bines,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. Convicted by a District Court jury of carrying a firearm without a license, G. L. c. 269, § 10(*a*), and carrying a loaded firearm, G. L. c. 269, § 10(*n*),[1] the defendant appeals, claiming that the admission of a ballistics certificate violated his rights under the Sixth Amendment to the United States Constitution, citing *Crawford* v. *Washington*, 541 U.S. 36 (2004), and *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009). He also contends that his motion to suppress the gun was improperly denied and that his motion for a new trial alleging several claims of ineffective assistance of trial counsel was improperly denied. We agree that the defendant's confrontation rights were violated and reverse his convictions. Because the defendant may be retried, we also address the denial of the motion to suppress.[2]

*Factual background.* The defendant, who was driving a car with three passengers, was stopped by a State trooper for a traffic violation at approximately 10:00 P.M. on May 4, 2006, in Lowell. Following the stop of the car, a gun was discovered in the area under the driver's seat, and the defendant was taken in custody. The trooper discovered three live bullets in the gun as he was clearing it.

After a hearing, the defendant's motion to suppress the gun was denied in October, 2006, and a jury trial was held in January, 2007.[3] A notice of appeal was timely filed by the defendant, but he moved for a new trial in April, 2008. The defendant's motion for a new trial was denied by the trial judge in June, 2008. The defendant timely appealed from the denial of his new trial motion, and following the entry of his appeal in this court, the two appeals were consolidated.

*Discussion.* 1. *The ballistics certificate.* We begin by examining how the challenge to the ballistics certificate was advanced by the defendant. At trial, the defendant did not object to the introduction in evidence of the ballistics certificate. This issue was raised in his memorandum in support of his motion for a

---

[1]The defendant also was found responsible for a motor vehicle violation, and the charge was placed on file with the defendant's consent.

[2]In view of our disposition of the case, we do not consider the order denying the motion for a new trial, which addressed the defendant's claims of ineffective assistance of counsel.

[3]The judge who ruled on the motion to suppress was not the trial judge.

new trial. The defendant argued that trial counsel was ineffective in not objecting to the admission in evidence of the ballistics certificate and asserted that his right of confrontation under the Sixth Amendment to the United States Constitution as construed in *Crawford* v. *Washington,* 541 U.S. 36 (2004), had been violated. Noting that *Melendez-Diaz* v. *Massachusetts* was then pending in the Supreme Court, he argued that such an objection would have preserved the *Crawford* issue in this case. In his November, 2008, brief on direct appeal, the defendant acknowledged that this court, in *Commonwealth* v. *Morales,* 71 Mass. App. Ct. 587, 588 (2008), relying on *Commonwealth* v. *Verde,* 444 Mass. 279, 283 (2005), held that a ballistics certificate was a " 'record of a primary fact made by a public officer in the performance of [an] official duty' that did not violate the defendant's rights under the confrontation clause of the Sixth Amendment."[4] Recognizing that *Verde* was controlling precedent, the defendant stated that trial counsel's failure to object should not constitute a waiver of his constitutional claim and would have been futile in any event.

Prior to oral argument the defendant submitted a supplemental memorandum addressing the effect of *Melendez-Diaz* v. *Massachusetts,* arguing that a ballistics certificate, just as a drug analysis certificate, violates a defendant's right of confrontation if introduced without the testimony of the ballistics expert, or an opportunity to cross-examine the expert, and urging that our review be conducted under the harmless beyond a reasonable doubt standard. The Commonwealth did not submit a supplemental memorandum but argued in its brief that the introduction of the ballistics certificate in this case did not create a substantial risk of a miscarriage of justice. It is unnecessary to decide which standard of review is to be applied in this case because we conclude that there was reversible error under either standard. Compare *Commonwealth* v. *Mendes,* 75 Mass. App. Ct. 390, 396-397 (2009).[5]

---

[4]The United States Supreme Court granted Morales's petition for a writ of certiorari. On June 29, 2009, the Court ordered the judgment vacated and remanded the case to this court for further consideration in light of *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009). *Morales* v. *Massachusetts,* 129 S. Ct. 2858 (2009).

[5]In addressing the challenge to the ballistics certificate, we do not write on a clean slate. See the following cases that have ruled on ballistics certificates

The firearms crimes charged in this case require the Commonwealth to prove that the gun is a firearm, defined in G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8; that is, it is "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel . . . is less than 16 inches." The Commonwealth is required to "present *some* competent evidence from which the jury reasonably can draw inferences that the weapon will fire." *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 2 (1997). General Laws c. 140, § 121A, as appearing in St. 1987, c. 300, provides that a "certificate by a ballistics expert . . . shall be *prima facie* evidence of his findings as to whether or not the item furnished is a firearm [emphasis added]."

The evidence submitted by the Commonwealth in this case begins and ends with the testimony of the trooper who seized the gun and found that it was loaded. Relying on the ballistics certificate, he stated that the gun had been test fired and was functioning properly. The certificate described the gun as a ".22LR caliber Llama Spa[]nish semi automatic pistol . . . [w]ith magazine and four (4) .22LR caliber live [cartridges]." The certificate stated that the barrel length was three and eleven-sixteenths inches, that the gun had been test fired using two of the submitted cartridges, and that there were no malfunctions. Other than his observation that the gun was loaded when he seized it, the trooper offered no other observations or any opinions or evidence whether the gun was a working firearm.

The admission of the gun in evidence does not eliminate the problems raised by the erroneous admission of the certificate. While the jury could determine the barrel length by inspection, "the mechanisms of guns are not so universally familiar that jurors, simply by looking at one, can tell whether it works." *Commonwealth* v. *Nieves, supra* at 3. *Commonwealth* v. *Chery*, 75 Mass. App. Ct. 909, 910-911 (2009). While a jury could infer

under the *Melendez-Diaz* v. *Massachusetts, supra,* and *Morales* v. *Massachusetts, supra,* decisions: *Commonwealth* v. *Brown,* 75 Mass. App. Ct. 361 (2009); *Commonwealth* v. *Mendes,* 75 Mass. App. Ct. 390 (2009); *Commonwealth* v. *Chery,* 75 Mass. App. Ct. 909 (2009); *Commonwealth* v. *Hollister,* 75 Mass. App. Ct. 729 (2009); *Commonwealth* v. *Ware, ante* 53 (2009).

We acknowledge receipt of letters from the defendant after oral argument, citing some of these and other cases.

without expert testimony that a loaded gun is capable of firing a bullet, *Commonwealth* v. *Fancy*, 349 Mass. 196, 204 (1965), there is no indication that they were given any appropriate instructions in this case, and in any event, we think such a finding alone would not be conclusive. Moreover, there was no independent evidence that the gun had been recently fired. Compare *Commonwealth* v. *Mendes, supra* at 391-392 (police heard shots and soon found gun, which smelled of gunpowder as if recently fired and contained both live bullets and spent shell casings).[6] Moreover, the prosecutor specifically relied on the certificate in closing argument and stated that "the certification says it does fire." See *Commonwealth* v. *Ware, ante* 53, 58 (2009).

Finally, there is no merit in the Commonwealth's assertion that it is significant that the defendant never argued that the gun and ammunition did not meet the statutory definitions. "We recognize that a defendant cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt by failing to contest an essential element of that crime at trial." *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986). Also, while the defendant asserted that he had no knowledge that the gun was in the car, "a defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt." *Commonwealth* v. *Cowans*, 52 Mass. App. Ct. 811, 821 (2001), quoting from *Commonwealth* v. *Shea*, 398 Mass. 264, 269 (1986).

It readily appears that the Commonwealth sought to prove its case through a near-total reliance on the certificate. The Supreme Court determined that it is error for the "prosecution to prove its case via *ex parte* out-of-court affidavits." *Melendez-Diaz* v. *Massachusetts, supra* at 2542. We conclude that the error constituted a substantial risk of a miscarriage of justice because it is "plausible . . . that the [jury's] result might have been otherwise but for the error." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). Because it is apparent that "there is a reasonable possibility that the evidence complained of might

---

[6]For summaries of cases setting forth evidence from which a jury could draw the inference that a firearm will fire, see *Commonwealth* v. *Nieves, supra* at 2-3, and *Commonwealth* v. *Hollister, supra* at 732-733.

have contributed to the conviction," *Chapman* v. *California,* 386 U.S. 18, 23 (1967), quoting from *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 (1963), we also conclude that the error was not harmless beyond a reasonable doubt. The defendant's convictions must be reversed.

2. *The motion to suppress.* The defendant's argument that his motion to suppress the gun was improperly denied rests on his assertion that the judge's finding that his movements were "furtive" is clearly erroneous because, he asserts, the movements described by the police officer "were not 'furtive' as defined by court decisions."[7]

Because the automobile that the defendant was driving did not immediately stop when the trooper signaled for the vehicle to stop, the trooper, who was alone, sought backup. When the automobile did subsequently stop, the trooper approached the driver's side. He saw four occupants in the vehicle. He noticed that the defendant was "making movement side to side and slightly forward" and was "fumbling with an object in his lap [and] manipulating that object between his legs."

Upon the arrival of two additional troopers, the first trooper ordered the occupants to put their hands on their heads. They did not comply with the first order, but they did comply after a second order. The trooper then ordered the defendant to leave the automobile. The trooper pat frisked the defendant and found a cellular telephone. The trooper told one of the other troopers of the defendant's movements, and that trooper, observing the driver's door open, checked the area around the driver's seat and found a gun.

The defendant quarrels only with the judge's determination that his gestures were furtive, asserting that these movements were mere "fidgeting." "The phrase 'furtive gesture' appears in many decisions where the issue is whether a patfrisk or a search

---

[7] The judge's decision appears on the motion as follows:

"After hearing & consideration, & crediting [the trooper's] testimony, I find that the stop was carried out based upon a reasonable suspicion of a moving violation & that the exit order, given the initial refusal to comply with a reasonable request to the passengers & driver to put hands on heads prompted by a concern for officer safety based upon the driver's furtive gestures was, as was the pat down & search, given all of the facts & circumstances, reasonable."

of a vehicle is justified. The gestures are interpreted by the police (and by the courts) as demonstrating the hiding of contraband or as threatening the officers' safety." *Commonwealth v. Holley*, 52 Mass. App. Ct. 659, 664-665 (2001). Our cases often indicate that such movements were attempts to hide drugs or guns in compartments or under the seats of an automobile. Guns so hidden could be retrieved and could threaten the safety of an officer or others. Compare *Commonwealth v. Rivera*, 33 Mass. App. Ct. 311, 315 (1992); *Commonwealth v. Heughan*, 40 Mass. App. Ct. 102, 104-105 (1996). "[A]n officer [is required] to have reasonable suspicion of danger to himself or others before ordering a driver from a lawfully stopped vehicle." *Commonwealth v. Rivera*, 67 Mass. App. Ct. 362, 365 (2006), and cases cited. The judge found the trooper's suspicion in this case was reasonable. We conclude that the motion judge's findings are not clearly erroneous and that he correctly denied the motion to suppress the gun.[8]

*Judgments reversed.*

*Verdicts set aside.*

---

[8]The defendant notes that his motion to suppress also sought suppression of statements as fruit of the poisonous tree. He makes no argument on appeal concerning the statements. Therefore, we have no occasion to consider them.