The defendant, Francis C. Roche, Jr., appeals from his conviction of operating a motor vehicle while under the influence of intoxicating liquor (fifth offense) and from the denial of his motion for new trial. On appeal, the defendant argues that (1) the admission in evidence of certain documents pertaining to the prior convictions was error creating a substantial risk of a miscarriage of justice; and (2) he received the ineffective assistance of counsel. We affirm.
Background. In March, 2015, in a bifurcated jury trial, the defendant was found guilty of operating a motor vehicle while under the influence of intoxicating liquor (OUI) (fifth offense), in violation of G. L. c. 90, § 24(1)(a )(1),[2] and operating a motor vehicle after license suspension, in violation of G. L. c. 90, § 23.[3] During the subsequent offense trial, which was heard by the same jury that had convicted the defendant of the underlying offense, the Commonwealth sought to prove that the defendant had committed at least four prior offenses: one in 1982, one in 1989, and two in 1990. The only evidence of the 1982 offense was a record from the Registry of Motor Vehicles (RMV), which had an entry of "DWI ALCOHOL PROGRAM WESTBOROUGH R CONVERSION," next to a "FINDING DATE" of October 27, 1982. The other three offenses (one in 1989 and two in 1990) in the RMV record set forth separate conviction dates for each offense. The Commonwealth also introduced docket sheets from the Westborough District Court and records from the Worcester County sheriff's department pertaining to the two 1990 offenses. These documents designated the defendant's OUI convictions in March, 1990, and May, 1990, as third and fourth offenses, respectively. The defendant filed a motion for new trial challenging his conviction of the subsequent offense portion of the OUI charge. After an evidentiary hearing, the judge denied the defendant's motion. This appeal followed.
1. Proof of prior offenses. a. Prima facie case for 1982 conviction. The defendant argues that the RMV record that was introduced to prove the 1982 offense was not prima facie evidence because it did not "even identify a court associated with the 1982 entry; it only says 'conversion'-another unexplained term." The entry for the 1982 offense bears an "R," while the other entries have a "G" beside them. The defendant asserts that the document was "riddled with codes and acronyms that were not explained to the jury," and that the "undefined terms do not have a 'usual and accepted meaning' [that] the jurors could have understood based on their common knowledge." The crux of the issue is whether the terms provided in the RMV record were sufficient for the jury to find, beyond a reasonable doubt, that the defendant was convicted and/or assigned to an alcohol program as the result of an OUI offense in 1982. We conclude that they were.
Jurors may "draw reasonable inferences from the evidence; they are not permitted to engage in speculation or conjecture as to the meaning of unexplained technical phrases and notations." Commonwealth v. Scott, 464 Mass. 355, 362 (2013). The defendant relies on Scott in arguing that the terms provided in the RMV records here are insufficient for the jury to have drawn a reasonable inference. In Scott, the court concluded that medical records containing unexplained technical phrases such as "grade II hepatic laceration" required the jury to speculate as to their meaning. Id. at 362-364. Here, in contrast, the jury could reasonably infer from the notation "alcohol program" that the defendant was assigned to an alcohol program. The jury could also reasonably infer from the term "DWI" preceding "alcohol program," that such assignment was for a "like offense," as required under G. L. c. 90, § 24(1)(a )(1), as it was reasonable for the jury to infer that DWI, in this context, referred to driving while intoxicated. The terms were not so technical as to leave the jury to speculate.
The defendant's argument that the RMV record "provides no evidence of any adjudication or assignment in 1982" because it does not identify a court likewise fails. Appearing on the certified copy of the defendant's RMV record is a "Finding Date" of October 27, 1982, following the notation "DWI Alcohol Program Westborough R." A "finding date" is the date on which a court, or RMV hearing officer, finds an individual guilty, or responsible, for a specific offense. See Commonwealth v. Deramo, 436 Mass. 40, 46 (2002). The RMV record indicates that as a result of the DWI finding on October 27, 1982, the defendant was required to enter an alcohol program. In addition, Westborough is listed following the notation for the alcohol program. The entry on the RMV record for the defendant's 1982 offense satisfies the Commonwealth's burden to prove that the defendant was assigned to an alcohol program in 1982 due to a like offense.
b. Designation of 1990 convictions. The defendant argues that the admission of documents that incorrectly designated two prior offenses[4] was error which created a substantial risk of a miscarriage of justice and that trial counsel's failure to object to such admission was manifestly unreasonable. Where a party argues an unpreserved issue on appeal, we examine the issue for a substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967). We determine whether the wrongly admitted evidence caused or materially influenced the verdict of guilt. Ibid. "For that purpose we ... measure the error in the totality of the evidence and determine whether the properly admitted evidence independently permitted a finding of guilt beyond a reasonable doubt." Commonwealth v. Mendes, 75 Mass. App. Ct. 390, 396 (2009). The defendant submits that there was a substantial risk of a miscarriage of justice in two ways: first, absent the incorrect documents entered in evidence, the Commonwealth's "residual evidence [was] insufficient to sustain the verdict"; and second, the jury heavily relied on the incorrect documents as evidenced by the jury's question.
There is no error in the judge's conclusion that any correction to the documents identifying the offenses as third and fourth, rather than second, would not have "played an important role in the jury's deliberations and conclusions." The jury had certified copies of the RMV records that provided the dates of each offense. The jury could have examined the RMV records and counted four prior convictions and/or assignments: (1) the defendant's 1982 offense, which occurred on August 19, 1982, and resulted in an assignment to a "DWI alcohol program"; (2) the defendant's 1989 offense, which occurred on January 12, 1989, and resulted in another assignment to a "DWI alcohol program"; (3) the defendant's March, 1990, offense, which occurred on March 31, 1990, and resulted in a "DWI" conviction; and (4) the defendant's May, 1990, offense, which occurred on May 27, 1990, and resulted in another "DWI" conviction.
During their deliberations, the jury asked whether "it's 5 total convictions (including alcohol treatment programs) or 5 criminal convictions?" and also whether they were missing some paperwork for 1999. The jury's questions during deliberations did not, as the defendant argues, suggest that the jury relied on the incorrectly designated documents in finding the defendant guilty of a fifth offense. The judge answered the first question as follows: "Let me re-instruct you ... [with] what I said before. The word conviction refers to the entry of a guilty verdict by a jury or a guilty finding by a judge. A prior conviction may also be shown by proving that the same Defendant was previously assigned by a court to an alcohol or controlled substance education treatment or rehabilitation program and that the program assignment was made because it was of a like offense." This instruction is an accurate statement of the law. See Instruction 2.540 of the Criminal Model Jury Instructions for Use in the District Court (rev. May, 2011). In considering the strength of the case, the judge correctly found that the Commonwealth would have satisfied its burden of proving four prior convictions and/or assignments even if the Westborough docket sheets and Worcester jail records were removed from evidence or corrected.
2. Ineffective assistance of counsel. The two prongs of the analysis for ineffective assistance of counsel are well known: (1) "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," that (2) "deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). We review counsel's decisions at the time they were made, rather than on the basis of hindsight. See Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015).
The motion judge determined that the defendant did not satisfy either prong of the test. We review that decision "only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). Because the motion judge was also the trial judge, we accord his decision "special deference." Commonwealth v. Figueroa, 422 Mass. 72, 77 (1996).
a. Failure to investigate. The defendant argues that trial counsel provided ineffective assistance of counsel because he failed to investigate the defendant's prior offenses and that such failure deprived him of an "otherwise available, substantial ground of defence." Saferian, 366 Mass. at 96. Setting aside the first prong of the test, as discussed earlier, any failure to investigate did not deprive the defendant of an "otherwise available, substantial ground of defence." Ibid. The defendant relies on the argument that "[i]f counsel had prepared and identified the errors, he could have argued that the dockets were 'not competent evidence [of third and fourth offenses] to be laid before the jury,' " and that "[a]t best, [the dockets were] evidence of two second offense convictions." However, the judge concluded that such additional preparation and argument "would not have yielded any change in the number of prior offenses." We agree. Regardless of how the Westborough docket sheets or the Worcester jail records labeled the offenses, the defendant still had four prior convictions and/or assignments to alcohol treatment programs. It is the total number of prior offenses which is significant, rather than the labels placed on them. Consequently, even if trial counsel should have investigated this discrepancy, that omission did not deprive the defendant of a defense.
b. Counsel's trial strategy. The defendant argues that it was manifestly unreasonable for trial counsel to incorrectly argue to the jury that the defendant's two 1990 offenses counted as a single conviction. Yet, the defendant testified to his understanding that the two offenses were merged. Indeed, both charges were disposed of on the same date. We cannot say that it was manifestly unreasonable to pursue this theory.[5] Based largely on the motion judge's criticism of trial counsel, the defendant complains about his trial counsel's overall deficient performance. Given the state of the evidence, showing four predicate offenses, the defendant failed to establish that his trial counsel's strategy and performance affected the outcome. See Commonwealth v. Fisher, 433 Mass. 340, 354 (2001), quoting from Commonwealth v. Scott, 428 Mass. 362, 369 (1998) ("[A] list of subjective critiques of defense counsel's decisions, absent a showing that errors likely affected the jury's conclusions, is insufficient to support an ineffective assistance of counsel claim").
Judgment affirmed.
Order denying motion for new trial affirmed.

The defendant makes no arguments concerning his conviction of the underlying offense.

The defendant has not raised any issues concerning his conviction of driving with a suspended license.

The defendant filed a motion for new trial in the Worcester District Court, requesting that court to change the June, 1990, Westborough docket sheets to reflect that his March, 1990, and May, 1990, OUIs were only second offenses. The motion was allowed in that court. The motion judge in the Worcester District Court found that, at the time of the pleas for the two OUI offenses in 1990, the defendant had "two prior OUI convictions but only one prior OUI within 6 years [of the] offense dates." Thus, pursuant to the law in effect at that time, the two OUIs were disposed of incorrectly and both "should have been asserted as no more than a 'Second Offense.' "

That the motion judge did not credit the defendant's testimony on this point does not detract from the fact that it was a theory with some record support.