NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-905

COMMONWEALTH

vs.

ROBERT WHITE, Third.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted of possession with intent to distribute and trafficking cocaine[1] following a Superior Court jury trial.  Counsel failed to file a notice of appeal, and the defendant thereafter filed a motion for a new trial.  See White v. Commonwealth, 479 Mass. 1023, 1024 (2018).  The judge denied his motion but vacated the possession with intent conviction as duplicative.[2]  The defendant timely appeals from that denial, arguing that his motion for a required finding of not guilty should have been allowed because the evidence was insufficient to sustain the trafficking conviction.  We affirm.

---

[1] The defendant was convicted of trafficking between thirty-six and one hundred grams of cocaine.

[2] The Commonwealth does not challenge that finding on appeal.

Background.  Because the defendant challenges the sufficiency of the evidence, we recite the facts in the light most favorable to the Commonwealth, together with the reasonable inferences that could be drawn from them.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

On April 27, 2018, members of the Southeastern Massachusetts Gang Task Force ("officers") surveilled 18 Stanley Avenue in Taunton in preparation for the execution of a search warrant.[3]  After observing the defendant and his cousin, the targets of the investigation, outside of the property, the officers approached and detained them.  An officer recovered a plastic bag containing four smaller bags of crack cocaine from the defendant's underwear, and $393 from his pocket.  Once inside the apartment, the officers observed a glass jar containing several bags of what appeared to be crack cocaine, three digital scales, "a Pyrex [container] with a gold strainer inside" containing an "off-white, pasty residue," and a box of sandwich baggies, all of which were in plain view in the kitchen.  During the ensuing search of the apartment, the officers recovered six large bags of cocaine, two medium bags of crack cocaine, and a key to a Lexus registered to the defendant from a safe located in one of two bedrooms.  While searching the

_____

[3] The defendant does not challenge the validity of the warrant.

second bedroom, the officers discovered approximately $2,000 from inside a jacket pocket, a prescription bottle labeled with the defendant's name, and three letters addressed to the defendant.  The defendant told the troopers the jacket and the cash found in its pocket belonged to him.

The Commonwealth's drug expert witness testified, in response to the prosecutor's hypothetical factual scenarios bearing close resemblance to the evidence presented at trial, that the presence of cocaine, scales, strainers, packaging materials, and currency in an apartment was consistent with cocaine distribution.  The expert further opined that the amount and packaging of the drugs recovered from the defendant's person was consistent with distribution.  Finally, a forensic scientist with the Massachusetts State Police testified that, in total, the cocaine recovered from the apartment and the defendant weighed approximately seventy-seven grams.

Discussion.  The defendant argues that there was insufficient evidence to prove beyond a reasonable doubt his constructive possession of, and intent to distribute the cocaine in the apartment, as required to support the trafficking conviction.  In assessing the sufficiency of the evidence, we must decide "whether the evidence, in its light most favorable to the Commonwealth . . . is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime

3

charged." Commonwealth v. Mendes, 75 Mass. App. Ct. 390, 392 (2009), quoting Latimore, 378 Mass. at 676-677. Although a conviction may be based entirely on circumstantial evidence, and the inferences drawn need only be reasonable, not inescapable, see Commonwealth v. Rakes, 478 Mass. 22, 45 (2017), "a conviction may not rest on the piling of inference upon inference or on conjecture and speculation" (quotations and citation omitted). Commonwealth v. Ronchi, 491 Mass. 284, 297–298 (2023).

"Constructive possession requires proof of knowledge coupled with the ability and intention to exercise dominion and control" (quotations and citation omitted). Commonwealth v. Dagraca-Teixeira, 471 Mass. 1002, 1004 (2015). The Commonwealth is not required to show that the defendant's possession was exclusive; constructive possession may be exercised jointly. See Commonwealth v. Proia, 92 Mass. App. Ct. 824, 834 (2018). Here, the layout of the "extremely small" apartment and the conspicuous cocaine together with items used for drug distribution found in the kitchen "suggest that all of those present were involved in the activity, not simply aware of it."[4]

---

[4] The Commonwealth suggests the apartment was a stash house such that the defendant's intent to distribute can be inferred from his presence there. However, this case is unlike those cases where we have found that "a reasonable inference of guilt may be made from the defendant's presence in a sparsely furnished,

4

See Commonwealth v. Gonzalez, 452 Mass. 142, 148 (2008).

Contrast Dagraca-Teixeira, supra (no constructive possession where guns were found in attic accessible to ten occupants of apartment and search of "common living areas uncovered nothing establishing the defendants' connection to the weapons"). In fact, we have specifically found that "scales and packaging materials on the kitchen table . . . . in plain view is [a] factor that may support an inference of constructive possession of a stash of a controlled substance." Commonwealth v. Delarosa, 50 Mass. App. Ct. 623, 627-628 (2000). See Commonwealth v. Woods, 94 Mass. App. Ct. 761, 766 (2019) (expert testimony that cut-corner bags and scale indicated distribution supported sufficiency).

Of course, "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control over the [drugs], but presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency" (quotations and citation omitted). Dagraca-Teixeira, 471 Mass. at 1004. The defendant's various belongings linked him to the apartment and directly to the safe where the largest quantity of

_____

fortified apartment where drugs and drug packaging were found." See Commonwealth v. Antonio, 45 Mass. App. Ct. 937, 938 (1998). Here, the evidence tended to suggest not only that multiple adults lived in the apartment, but also that a child lived there. In any event, our decision does not rely on the stash house characterization.

5

cocaine was found. Citing Commonwealth v. Ramos, 51 Mass. App. Ct. 901 (2001), the defendant makes much of the fact that the letters addressed to him found in the bedroom drawer had a different address than that of the apartment. However, in Ramos, no personal belongings of the defendant besides the letters were found; instead, the items seized suggested that two other occupants were living there. 51 Mass. App. Ct. at 903. Here, the presence of the defendant's jacket containing $2,000, prescription bottle, and mail in a bedroom served as "evidence that the defendant rented, occupied, spent a great deal of time at or exercised control over the apartment or its contents." Id., quoting Commonwealth v. Caterino, 31 Mass. App. Ct. 685, 689 (1991). The presence of the key to the defendant's vehicle in the safe next to the cocaine further substantiated his connection to the largest quantity of drugs.

Finally, several factors beyond the presence of the defendant and his belongings in the apartment demonstrate that the defendant was directly involved in the distribution operation. For one, the Commonwealth presented evidence that the cocaine found on the defendant's person was packaged in a manner consistent with the intent to distribute, and inconsistent with personal use. See Commonwealth v. Sepheus, 468 Mass. 160, 165 (2014) ("[p]ackaging indeed may provide such support [of distribution]" where drugs are "bundled or packaged

6

in a manner that suggests they were the remains of a larger inventory").  See also Commonwealth v. Wilson, 441 Mass. 390, 400-401 (2004) ("We have consistently upheld the use of narcotics investigators as experts" to testify that manner in which drugs were packaged is "consistent with an intent for 'street distribution' rather than personal use").  The defendant's link to the distribution of the larger quantities could be further inferred from the fact that the crack cocaine recovered from his pocket was consistent with the larger cache of crack cocaine located in the safe and in the kitchen as well as with the evidence of instruments typically used for converting powder cocaine to crack cocaine found in the kitchen. See Commonwealth v. Alcantara, 53 Mass. App. Ct. 591, 597 (2001), and cases cited ("A defendant who admits possession of a small quantity of drugs may be linked to a larger quantity by similarities in the drug's consistency").

Furthermore, the amount of cash found in the pocket of the defendant's jacket and on his person directly supports a reasonable inference that he was involved in the distribution of the drugs recovered from the target apartment.  See Gonzalez, 452 Mass. at 148.  To the extent that the defendant attempts to explain its source as "tips" from his job as a TGI Friday's restaurant cleaner, neither the jury nor the judge who denied the new trial motion were required to credit that rationale.

7

See Commonwealth v. Lao, 443 Mass. 770, 779 (2005) ("it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province"). See, e.g., Gonzalez, supra at 144, 148 n.4 (factfinder "free to consider [defendant's] possession of [$2,604] as evidence of his involvement in illegal drug activity" despite his testimony that it was from the sale of his vehicle and his job at a garage).

In conclusion, the totality of the evidence and the inferences that could be reasonably drawn therefrom were sufficient to establish the elements of possession and intent to distribute cocaine, the quantity of which supported the trafficking conviction.

Accordingly, we affirm the order denying the defendant's motion for new trial.

So ordered.

By the Court (Wolohojian, Neyman & Smyth, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  August 14, 2023.

---

[5] The panelists are listed in order of seniority.